In re Lena Joyce HOLT, Debtor.

ELECTRIC POWER BOARD OF
CHATTANOOGA, Plaintiff,

v.

Lena Joyce HOLT, Defendant.

Bankruptcy No. 1–81–00679.
Adv. No. 1–81–0336.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 11, 1981.

Edward D. Meyer, Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, Tenn., for plaintiff.

Charles O. Ragan, Jr., Ragan & Wulforst, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The plaintiff, Electric Power Board of Chattanooga, filed a complaint against defendant, Lena Joyce Holt, and alleged that its claim against defendant arises from charges for electrical service furnished to the residence at 3513 5th Avenue, Chattanooga, Tennessee, for the period of December 17, 1975 through September 8, 1980.

The complaint charges that defendant altered the electrical meter used for measuring the amounts of electricity or aided and abetted others in altering of the meter.

The complaint further charges that electricity was delivered to the residence in excess of that recorded on the electrical meter and that the value of the electrical service was $1,854.29.

From the proof and the entire record the court finds that the electrical service was in the name of Charlie E. Holt. Mr. Holt died in December, 1978. Mrs. Holt continued to reside at the residence until on or about September 1, 1980.

There were no witnesses who saw Mrs. Holt altering the meter. Under oath she emphatically denied that she altered the meter.

At the residence of Mrs. Holt there has been a problem with the Chattanooga Gas Company. An official of the company testified that after the seasonal cut off of the gas in 1977, it was turned on again by someone other than the gas company. The service was used approximately two months before it was discovered by the gas company. The gas meter was removed so that service would no longer be available for Mrs. Holt's residence.

Mrs. Holt could not remember the problem with the gas company, but the evidence indicates a pattern of conduct by the occupants of the residence in question to use utility services from the Electric Power Board and the Chattanooga Gas Company without paying for them.

The court finds that it was the responsibility of Mrs. Holt's husband to pay for electrical power usage from December 17, 1975 until his death in December, 1978. The court further finds that it was the responsibility of Mrs. Holt to pay for the service in 1979 and 1980. The court be-

lieves that Mrs. Holt knew that she was receiving and using electrical service without paying for it.

The Electric Power Board's estimate was made without knowledge of whether the residence had a refrigerator, electric stove, television, hot water heater, or other appliances. The person making the estimate did not know the exact square footage of the residence in question. At the hearing the estimate of the value of electrical service was reduced from $1,801.02 to $1,556.63. The allegation was that this covered a period of approximately 56 months. The husband would have been liable for all but 20 months. This means that Mrs. Holt is responsible for 36% of $1,556.63, or $560.39.

The court finds that this amount is not dischargeable in bankruptcy. Under the provisions of 11 U.S.C. § 523(a),

(a) A discharge under . . . this title does not discharge an individual debtor from any debt—. .

(a) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud . . .

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . .

The court finds that defendant was guilty of "actual fraud" as used in the Bankruptcy Code and cannot be allowed to cheat the creditor. See Collier, ¶ 523.08(5), 15th ed., 1980.[1] It is clear that the debt of the defendant to the Electric Power Board arose from theft of electrical service. The defendant received the electrical service knowing that it was stolen. Therefore, this indebtedness cannot be discharged in bankruptcy.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.

1. Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to cir-

cumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.